UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

– *against* –

ISSAK ALMALEH, a/k/a "Issak Izrael," and
ANTOANETA IOTOVA,

Defendants.

**OPINION & ORDER**

17 Cr. 25 (ER)

<u>Ramos, D.J.:</u>

In this action, the government has alleged two types of fraudulent activity orchestrated by Issak Almaleh and Antoaneta Iotova.  Superseding Indictment, Doc. 462 ("S1 Indictment").  First, from approximately March 2011 through September 2017, the defendants orchestrated a scheme through which they filed fraudulent or forged documents purporting to transfer ownership of real properties located in New York and Florida to themselves or entities over which they exercised control, and subsequently fraudulently rented or attempted to rent those properties to others.  *Id.* at ¶¶ 4–5.  Second, on approximately April 29, 2015, the defendants submitted a false application for federal deposit insurance to the Federal Deposit Insurance Corporation ("FDIC").  *Id.* at ¶ 6.

The government charged the defendants with four counts:  conspiracy to commit mail fraud and wire fraud, mail fraud, wire fraud, and false statements to the FDIC pursuant to 18 U.S.C. § 1349, 18 U.S.C. §§ 1341 and 2, 18 U.S.C. §§ 1343 and 2, and 18 U.S.C. §§ 1007 and 2.  *See id.*

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The government filed the original indictment on January 11, 2017.  Doc. 2.  On August 31, 2020, the defendants filed two motions.  First, they filed a motion to dismiss

the original indictment or, in the alternative, for a bill of particulars. Doc. 423; Memorandum of Law in support of Motions to Suppress Physical Evidence, Doc. 427 ("Mot. to Suppress"). The defendants argued, in part, that the indictment is insufficient with respect to Counts One (conspiracy to commit bank fraud), Two (bank fraud), and Three (wire fraud). Memorandum of Law in support of Motion to Dismiss or, in the alternative, for Bill of Particulars, Doc. 425 ("Mot. to Dismiss"). Second, they filed a motion to suppress evidence seized pursuant to warrants. Doc. 426; Mot. to Dismiss.

On December 6, 2021, the government filed the S1 Indictment. The S1 Indictment contains new Counts One (conspiracy to commit mail fraud and wire fraud) and Two (mail fraud). On January 31, 2022, the Court directed the defendants to file supplemental briefing regarding Counts One through Three in the S1 Indictment by February 14. Doc. 470. As further described below, the defendants filed supplemental briefing on February 14. Supplemental Memorandum of Law in support of Motion to Dismiss or, in the alternative, for Bill of Particulars, Doc. 477 ("Supp. Mot. to Dismiss").

For the reasons discussed below, the defendants' motions are DENIED.

## II.    MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS

The defendants move to dismiss the S1 Indictment pursuant to Federal Rule of Criminal Procedure 12 for failure to state an offense and for lack of specificity or, in the alternative, for a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f) with respect to Counts Two and Three, and to strike prejudicial surplusage from the S1 Indictment.

A. **Legal Standards**

i. **Rule 12(b)(3)(B)**

A defendant may move to dismiss an indictment on the ground that it is defective under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, including for lack of specificity and failure to state an offense. "Since federal crimes are 'solely creatures of statute,' a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012) (quoting *Dowling v. United States*, 473 U.S. 207, 213 (1985)) (internal citation omitted). An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). In order to satisfy these requirements, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (quoting *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975)). Thus, the indictment need only allege "the 'core of criminality' the government intend[s] to prove" at trial, and consequently, the indictment is "read . . . to include facts which are necessarily implied by the specific allegations made." *United States v. Rigas*,

490 F.3d 208, 229 (2d Cir. 2007) (citations omitted).  Where the charged crime "involves making false statements, the 'core of criminality' is not the substance of the false statements but rather that knowing falsehoods were submitted." *Id.* (quoting *United States v. Sindona*, 636 F.2d 792, 797 (2d Cir. 1980)) (internal quotation marks omitted).

When evaluating the sufficiency of an indictment, the court considers all allegations in the indictment to be true and does not consider any contrary assertions of fact by the defendant.  *See United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985); *see also United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir. 1998) (opining that a court focuses on the legal sufficiency of the indictment itself, without ruling on the legal sufficiency of the evidence).  Therefore, "[a] defendant challenging the sufficiency of an indictment on a motion to dismiss faces a high hurdle." *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *2 (S.D.N.Y. Dec. 11, 2017).

Courts have generally applied these standards to indictments containing counts of mail and wire fraud and conspiracy to commit such fraud.  *See, e.g.*, *United States v. Kozel*, No. 19 Cr. 460 (KMW), 2020 WL 4751498, at *2 (S.D.N.Y. Aug. 17, 2020) (denying motion to dismiss indictment, because "[e]ach count of the Indictment . . . sets forth the elements of the offenses alleged, and states the approximate time period during which the violation is alleged to have occurred," and finding that "by providing Defendant with a narrative of the manner in which Defendant is alleged to have committed the charged offenses, the Indictment provides Defendant with more detail than is strictly necessary"); *United States v. Gatto*, 295 F. Supp. 3d 336, 341 (S.D.N.Y. 2018) (denying motion to dismiss indictment containing conspiracy to commit wire fraud where it "track[ed] the language of [the federal wire fraud statute]," and opining that "extensive

factual allegations as to when, how and with whom the alleged scheme was undertaken . . . [were] more than sufficient to inform defendants of the particulars of the alleged conspiracy in which they are charged with having participated").

### ii.    Rule 7(f)

"Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987) (citations omitted), *aff'd*, 875 F.2d 857 (2d Cir. 1989). "It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case. The court must be cognizant of the fact that a bill of particulars confines the government's evidence at trial to the particulars furnished." *United States v. Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985). "Therefore, the proper test in deciding whether a bill of particulars should be required of the Government is whether the bill of particulars is *necessary* for the defense, not whether it would aid the defendant in his preparation." *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (emphasis added) (citations omitted).

"Whether to grant a bill of particulars rests within the sound discretion of the district court," *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984) (citation omitted), after considering "the totality of the information available to the defendant—through the indictment, affirmations, and general pre-trial discovery." *United States v. Thompson*, No. 13 Cr. 378 (AJN), 2013 WL 6246489, at *7 (S.D.N.Y. Dec. 3, 2013) (citation omitted); *see United States v. Binday*, 908 F. Supp. 2d 485, 497 (S.D.N.Y. 2012) ("If the information the defendant seeks 'is provided in the indictment or in some acceptable alternate form,' such as discovery or other correspondence, no bill of particulars is required." (quoting *Bortnovsky*, 820 F.2d at 572)).

## B.    Discussion

### i.    Motion to Dismiss

The defendants initially moved to dismiss the original indictment pursuant to Rule 12(b)(3)(B) for failure to state an offense and for lack of specificity.  Mot. to Dismiss at 3–17.  Following the filing of the S1 Indictment, the defendants maintain the motion to dismiss on these grounds,[1] and further allege that the S1 Indictment should be dismissed on statute of limitations grounds.  Supp. Mot. to Dismiss.[2]

With respect to whether the S1 Indictment fails to state an offense, *first*, the defendants argue that this action is an example of overcriminalization and prosecutorial

---

[1] *See* Supplemental Memorandum of Law in support of Motion to Dismiss or, in the alternative, for Bill of Particulars, Doc. 477 ("Supp. Mot. to Dismiss"), at 4–8.

[2] The defendants argue that because the government attempted to "skirt" the five-year statute of limitations for mail fraud and wire fraud, the S1 Indictment, Doc. 462, should be dismissed.  *Id.* at 1.  However, the defendants' arguments regarding the statute of limitations are premised on the original indictment being dismissed.  *Id.* at 1–4.  In fact, the defendants do not appear to challenge the S1 Indictment as being otherwise untimely or improperly filed.  Thus, the Court agrees with the government that the S1 Indictment is not barred by the statute of limitations.  *See United States v. Mikhael*, 714 F. App'x 94, 95 (2d Cir. 2018); *United States v. Salmonese*, 352 F.3d 608, 622 (2d Cir. 2003); *United States v. Grady*, 544 F.2d 598, 601 (2d Cir. 1976).

overreach. Mot. to Dismiss at 3–11; Supp. Mot. to Dismiss at 4–5. In support of their argument, they contend that (1) the allegations at issue could have been resolved in civil courts much more efficiently, at less expense, and without depriving the defendants' liberty; (2) there are alleged discrepancies between the government's claims and its discovery and other evidence; and (3) there is a dearth of criminal fraud cases, relative to the large number of civil enforcement actions, brought by the government against alleged perpetrators involved in the residential mortgage-backed securities fraud at the heart of the financial crisis of 2008. Mot. to Dismiss at 4–7. In particular, the defendants posit that Deutsche Bank National Trust Company ("DBNTC"), an alleged victim in this case, has been involved in civil litigation related to securities, mortgage loan servicing, and foreclosures. *Id.* at 7–9; Reply Memorandum of Law in support of Motion to Dismiss or, in the alternative, for Bill of Particulars, Doc. 438 ("Reply"), at 8.

At base, these arguments suggest a claim of selective prosecution. "To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974); *see also* Memorandum of Law in opposition to Defendants' Pretrial Motions, Doc. 433 ("Opp."), at 7–8, 9–11. The Supreme Court has held that the standard for proving a claim of selective prosecution is "a demanding one." *United States v.*

*Armstrong*, 517 U.S. 456, 463 (1996).  A defendant must establish by "clear evidence" that prosecutors acted with discriminatory effect and were motivated by a discriminatory purpose.  *Id.* at 457, 465 (citations omitted).

The defendants fail to meet the heavy burden of establishing that the participants who issued residential mortgage-backed securities that resulted in the financial crisis of 2008 are in any way similarly situated.  "Mere speculation . . . is not sufficient to show discriminatory purpose."  *United States v. Chalmers*, 474 F. Supp. 2d 555, 569 (S.D.N.Y. 2007).  Nor do the defendants show that the government's prosecution of them was motivated by improper considerations.  Accordingly, the defendants' claim of selective prosecution fails.

*Second*, the defendants argue that this case raises federalism concerns arising from the federal criminal prosecution of matters traditionally regulated by the states. Mot. to Dismiss at 11; Supp. Mot. to Dismiss at 4–5.  The cases relied upon by the defendants are inapposite.[3]  This case presents no similar issue.  The Second Circuit has rejected arguments that prosecution under the mail and wire fraud statutes violated principles of federalism, holding that "[h]aving proved the elements of mail and wire fraud, this case rests squarely within the group of cases that have prosecuted similar private sector frauds under federal law, and appellants' conduct is precisely the type of misuse of the mails and wires the statutes were meant to address."  *United States v. Rybicki*, 38 F. App'x 626, 630 (2d Cir. 2002) (citation omitted); *see also United States v.*

---

[3] *See McDonnell v. United States*, 579 U.S. 550 (2016) (clarifying the meaning of "official act" under 18 U.S.C. § 201); *Bond v. United States*, 572 U.S. 844, 863 (2014) (rejecting the interpretation of "chemical weapon" under 18 U.S.C. § 229 to include any poisoning); *Cleveland v. United States*, 531 U.S. 12, 24 (2000) (holding that state and municipal licenses or permits do not qualify as "property" for purposes of 18 U.S.C. § 1341); *Williams v. United States*, 458 U.S. 279, 290 (1982) (denying an interpretation of 18 U.S.C. § 1014 that proscribed the deposit of bad checks in a federally insured bank).

*DeFiore*, 720 F.2d 757, 761 (2d Cir. 1983) (holding that the wire fraud statute "plainly applies to '*any* scheme or artifice to defraud' in which the jurisdictional means—the wires—are employed" and noting that "[i]ts focus is upon the misuse of the wires, not the regulation of state affairs"); Opp. at 8–9.

 *Third*, the defendants assert that the Court should take note of the fact that, if a prosecution were initiated in New York state court based on the New York properties, Iotova would be able to move to dismiss that case pursuant to New York Criminal Procedure Law § 210.40, which provides that an indictment may be dismissed in the furtherance of justice when certain factors clearly demonstrate that the prosecution of the defendant would result in injustice. Mot. to Dismiss at 11–13. Notwithstanding the defendants' representations, the Second Circuit held that "[a] district court does not have the power to dismiss an indictment that is legally sufficient simply because it deems the dismissal to be in the interests of justice." *United States v. Artuso*, 618 F.2d 192, 196 (2d Cir. 1980) (citation omitted); *see also* Opp. at 6–7, 8, 11; Memorandum of Law in opposition to Defendants' Supplemental Pretrial Motions, Doc. 485 ("Supp. Opp."), at 6, 7.[4]

 With respect to whether Counts One through Three lack specificity, the Counts track the language of the relevant statutes and state the elements of each offense. Count One is brought pursuant to 18 U.S.C. § 1349, which reads "[a]ny person who attempts or

---

[4] The Second Circuit set forth the standard for the dismissal of an indictment, opining that "[t]he extreme sanction of dismissal of an indictment is justified in order to achieve one or both of two objectives: first, to eliminate prejudice to a defendant in a criminal prosecution; second, to help to translate the assurances of the United States Attorneys into consistent performances by their assistants." *United States v. Artuso*, 618 F.2d 192, 196 (2d Cir. 1980) (quoting *United States v. Fields*, 592 F.2d 638, 647 (2d Cir. 1978)). The defendants have not shown that the government's conduct calls for the extreme sanction of dismissal of the S1 Indictment.

conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The elements of that charge are: "(1) an agreement between at least two people to commit an unlawful act, and (2) the defendant's knowing engagement in the conspiracy with the specific intent that the object of the conspiracy be committed." *United States v. Zemlyansky*, 908 F.3d 1, 10 (2d Cir. 2018) (citations omitted).[5]

Counts Two and Three are brought pursuant to 18 U.S.C. §§ 1341 and 1343, respectively. Section 1343 states, in part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." The essential elements of mail and wire fraud offenses are "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004) (citation and alterations omitted); *see also United States v. Schwartz*, 924 F.2d 410, 416 (2d Cir. 1991) (noting that "the mail fraud and the wire fraud statutes use the same relevant language").[6]

---

[5] Contrary to the defendants' representation that the conspiracy charge in Count One must specify an overt act, the Second Circuit held that 18 U.S.C. § 1349 does not require the commission of an overt act. *United States v. Roy*, 783 F.3d 418, 420 (2d Cir. 2015).

[6] Contrary to the defendants' arguments regarding Counts Two and Three, a count of mail fraud or wire fraud need not contain specific uses of the mail or wires in furtherance of the scheme. *See United States v. Zandstra*, No. 00 Cr. 209 (RWS), 2000 WL 1368050, at *4 (S.D.N.Y. Sept. 20, 2000) (collecting cases where courts held that indictments for mail and wire fraud need not identify specific mailings and wire transfers, nor must they specify which materials or representations are alleged to be fraudulent, to be

Counts One through Three each contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged," and "give the official or customary citation of the statute, rule, regulation, or other provision of law that [the defendants are] alleged to have violated." Fed. R. Crim. P. 7(c)(1); *see also* S1 Indictment at ¶¶ 1–5. Furthermore, each count "first, contains the elements of the offense charged and fairly informs [the defendants] of the charge against which [they] must defend, and, second, enables [them] to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Stringer*, 730 F.3d at 124 (quoting *Hamling*, 418 U.S. at 117); *see also* S1 Indictment at ¶¶ 1–5. Counts One through Three "track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Stavroulakis*, 952 F.2d at 693 (quoting *Tramunti*, 513 F.2d at 1113); *see also* S1 Indictment at ¶¶ 1–5. In summary, Counts One through Three are sufficient because they allege that the defendants' conduct violated the relevant statute, track such statutes, set forth the elements of the charged crimes, identify the approximate time and place of the alleged acts, and state the nature of the fraudulent scheme that was the subject of the conspiracy. *See, e.g.*, *Kozel*, 2020 WL 4751498, at *2 (denying motion to dismiss indictment containing counts of conspiracy to commit wire fraud and wire fraud); *United States v. Kim*, No. 09 Cr. 1160 (DLC), 2010 WL 1780959, at *2–3 (S.D.N.Y. May 4, 2010) (denying motion to dismiss count of conspiracy to commit wire fraud).[7]

---

sufficient under Rule 7(c)). The Court finds the defendants' cited cases, which are mostly out-of-circuit, inapposite.

[7] The Court rejects the defendants' argument that Count One is insufficient because it fails to specify the nature of the scheme, the fraudulent means employed, or the interstate carriers and communications used. *See* Memorandum of Law in support of Motion to Dismiss or, in the alternative, for Bill of Particulars, Doc. 425 ("Mot. to Dismiss"), at 15; Supp. Mot. to Dismiss at 5, 6. In accordance with precedent, Count One tracks the statutory language, alleges every essential element of the offense, and states the time and place of the alleged crime. *See, e.g.*, *United States v. Halkbank*, No. 15 Cr. 867 (RMB), 2020 WL 5849512, at *9 (S.D.N.Y. Oct. 1, 2020) (finding that conspiracy in violation of 18 U.S.C. § 1349 was clearly alleged where

Moreover, Counts Two and Three provide factual detail about the nature of the fraudulent scheme in which the defendants are alleged to have participated. *See* S1 Indictment at ¶¶ 4–5 ("[The defendants] operated a scheme to defraud the owners of real properties and potential renters of those properties by filing fraudulent or forged documents purporting to transfer ownership of real properties located in New York and Florida to themselves or entities they controlled and then fraudulently renting and attempting to rent those properties to innocent victims.").[8] Accordingly, the defendants' motion to dismiss is denied.

### ii.      Motion for a Bill of Particulars

In the alternative, the defendants seek a bill of particulars that identifies (1) the date and identity of each document alleged to be fraudulent or forged with respect to Counts Two and Three, and (2) the date and identity of each individual act of alleged mail fraud and wire fraud with respect to Counts Two and Three. Supp. Mot. to Dismiss.[9]

As the government argues, and the defendants concede, in a letter dated February 14, 2017, the government provided Iotova's former counsel with "a list of the properties referred to in the Indictment," consisting of 11 properties located in New York and 41

---

count tracked language of the statute charged and stated time and place of the alleged crime), *aff'd sub nom. United States v. Turkiye Halk Bankasi A.S.*, 16 F.4th 336 (2d Cir. 2021); *United States v. Zarrab*, No. 15 Cr. 867 (RMB), 2016 WL 6820737, at *12 (S.D.N.Y. Oct. 17, 2016) (same).

[8] To the extent that the defendants argue that the S1 Indictment aims to prosecute them for crimes based on disputed evidence or lack thereof, indictments are "not meant to serve an evidentiary function," but rather, "to acquaint the defendant with the specific crime with which he is charged [and] allow him to prepare his defense." *United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007) (internal quotation marks and citation omitted); *see United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 369195, at *5 (S.D.N.Y. Jan. 9, 2018) (finding that an argument based on factual disputes and evidentiary support for the charges is "not a matter appropriately addressed" in a motion to dismiss the indictment), *aff'd*, 820 F. App'x 23 (2d Cir. 2020).

[9] The defendants initially sought a bill of particulars that identified (1) the date and identity of each deed alleged to be fraudulent with respect to Count Two in the indictment, and (2) the date and identity of each individual act of alleged wire fraud with respect to Count Three in the indictment. Mot. to Dismiss.

properties located in Florida.  Mot. to Dismiss, Ex. A; *see also* Mot. to Dismiss at 19; Opp. at 18; Supp. Opp. at 8.[10]  In addition, the government contends that its productions have provided "specific, organized detail as to those properties," including "all of the records available to it as to the properties described in that letter, labeled by state, county, and which of the defendants' alleged front companies was involved."  Opp. at 18–19; Supp. Opp. at 8.  While the defendants argue that it is unclear which specific properties are at issue, and which documents for each specific property are alleged to be fraudulent, Mot. to Dismiss at 19, "[t]o the contrary, the [g]overnment has made clear that the filings made by the defendants in connection with the properties identified in letters and discovery are fraudulent, and have been specifically identified to the defendants in that discovery."  Opp. at 20; Supp. Opp. at 8.  Furthermore, the government contends that it has provided the defendants with the bulk of the exhibits it intends to use at trial, a witness list, and the vast majority of Jencks Act material for those witnesses.  Supp. Opp. at 8–9.

The defendants raise issues with the government's discovery, including that the folders produced for at least two of the properties were empty or missing and that certain documents are assignments of mortgage, as opposed to deeds.  Reply at 2–3, 10.  As described above, arguments related to the sufficiency of the evidence are not appropriately considered on a pretrial motion to dismiss.  Furthermore, the defendants' request that the Court examine the grand jury minutes to determine whether the

---

[10] The defendants' argument that the government's list of properties referred to in the indictment is ambiguous and unclear in light of the "at least" language used in the indictment is moot.  *Id.* at 19, 19 n.28.  The S1 Indictment no longer includes such language.  *See* S1 Indictment at ¶¶ 4–5.

government indicted its case with facts not considered by the grand jury relies on inapposite cases.  *Id.* at 4; Supp. Mot. to Dismiss at 4.[11]

"A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial."  *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001) (citing *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995)).  "The purpose of a bill of particulars is not to compel disclosure about the precise manner in which the charged crimes were allegedly committed or the particular acts in which a defendant allegedly participated, or for which he is being held responsible."  *United States v. Bonventre*, No. 10 Cr. 228 (LTS), 2013 WL 2303726, at *6 (S.D.N.Y. May 28, 2013) (citation omitted), *aff'd in part*, 646 F. App'x 73 (2d Cir. 2016).

The present case involves two defendants who are alleged to have had intimate involvement with the operation of a fraudulent scheme over a six-and-a-half-year period. Given the level of detail that is contained in the original and S1 Indictments, the defendants cannot claim that the charges were so general that they did not advise the defendants of the specific acts of which they were accused.  *See United States v. Dawkins*, No. 17 Cr. 684 (ER), 2019 WL 2464924, at *8 (S.D.N.Y. May 23, 2019).  Specifically, the original indictment describes, in detail, the alleged fraud, including the entities associated with the defendants (Doc. 2 at ¶¶ 1–3), the government agencies involved in

---

[11] *See United States v. Restrepo*, 547 F. App'x 34, 43 (2d Cir. 2013) (reviewing grand jury minutes to assess whether grand jury received proper instructions regarding hearsay); *United States v. Hoey*, No. 11 Cr. 337 (PKC), 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014) (granting motion for court to conduct review of grand jury minutes to ensure that instructions complied with intervening Supreme Court decision); *United States v. Dupree*, No. 10 Cr. 627 (KAM), 2011 WL 3235763, at *5 (E.D.N.Y. July 28, 2011) (dismissing bank fraud count as insufficient where it failed to reference anything which could form the factual basis for the charge).

the recording and filing of documents pertaining to real properties in New York and Florida (*id.* at ¶ 4), and the nature and scope of the defendants' scheme to obtain real property, including dates of key events that were part of the scheme (*id.* at ¶¶ 5–11). *See also id.* at ¶ 17 ("[The defendants] submitted false deeds claiming ownership of real property through electronic government recording systems using the Internet."). Therefore, the original and S1 Indictments set forth each aspect of the scheme in a manner sufficient to apprise the defendants of the conduct with which they are charged.

Furthermore, the indictments must be viewed in the broader context of the information available to the defendants. *See United States v. Rigas*, 258 F. Supp. 2d 299, 305 (S.D.N.Y. 2003). The discovery material which was available to the defendants, including the search warrant applications for Iotova's email account and the defendants' residence, served to give notice to the defendants of the charges against them and prevent surprise at trial. For example, as further described below, the affidavits contain detailed information regarding the defendants' scheme, including specific incidents when the defendants filed fraudulent paperwork and used the phone, email communications, and the Internet in furtherance of their scheme.

The defendants argue that the circumstances presented here are analogous to *Bortnovsky*, 820 F.2d 572, *United States v. Reale*, No. 96 Cr. 1069 (DAB), 1997 WL 580778 (S.D.N.Y. Sept. 17, 1997), and *United States v. Zandstra*, No. 00 Cr. 209 (RWS), 2000 WL 1368050 (S.D.N.Y. Sept. 20, 2000). These cases are readily distinguishable.[12]

---

[12] The government's cases in support of their argument that requests for a bill of particulars identifying all documents or transactions giving rise to fraud charges are routinely denied are apposite, although they generally involved detailed indictments and discovery. *See* Memorandum of Law in opposition to Defendants' Pretrial Motions, Doc. 433 ("Opp."), at 17, 19; Supp. Opp. at 8; *see also United States v. Bonventre*, No. 10 Cr. 228 (LTS), 2013 WL 2303726, at *5–7 (S.D.N.Y. May 28, 2013) (denying requests for bills of particulars identifying allegedly false documents on which the government intended to rely where indictment described, in part, the types of documents that the defendants allegedly falsified), *aff'd in*

Opp. at 19–20; Supp. Opp. at 9 n.3. *Bortnovsky* involved an alleged scheme to defraud through the submission of false and inflated insurance claims for burglary losses. There, the government introduced evidence at trial of 12 burglaries and provided defense counsel with over 4,000 documents in discovery, but only four burglaries were alleged to be fabricated and only three documents were alleged to be false. *Bortnovsky*, 820 F.2d at 574. Therefore, the Second Circuit found that it was error to deny a bill of particulars identifying which of the insurance claims for burglary losses were fraudulent and which of the many invoices submitted were falsified. Unlike the circumstances here, "*Bortnovsky* and [similar cases] presented the quintessential 'needle in a haystack' problem to defendants who were faced with sifting through thousands of legitimate transactions in an attempt to discover which transactions the government sought to prove were fraudulent." *United States v. Kahale*, 789 F. Supp. 2d 359, 376 (E.D.N.Y. 2009), *aff'd sub nom. United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012); *see, e.g.*, *United States v. Rose*, No. 19 Cr. 789 (PGG), 2021 WL 2117119, at *15 (S.D.N.Y. May 24, 2021) (collecting cases denying requests for bills of particulars identifying allegedly false documents and transactions where most or all activity was alleged to have been illegal).

In contrast, the indictments and discovery materials here provide adequate notice to the defendants of the crimes charged and specify the properties for which allegedly

---

*part*, 646 F. App'x 73 (2d Cir. 2016); *United States v. Cuti*, No. 08 Cr. 972 (DAB), 2009 WL 3154310, at *7–9 (S.D.N.Y. Sept. 24, 2009) (denying motions for bills of particulars identifying fraudulent transactions and statements where discovery and correspondence were extensive, including a list of allegedly fraudulent transactions), *aff'd*, 528 F. App'x 84 (2d Cir. 2013); *United States v. Guttenberg*, No. 07 Cr. 141 (DAB), 2007 WL 4115810, at *4–5 (S.D.N.Y. Nov. 14, 2007) (denying request for bill of particulars identifying, in part, which transactions were allegedly based on inside information where there was detailed indictment and voluminous discovery).

fraudulent paperwork was filed.[13]  In addition to providing the defendants with a list of the properties at issue, the government specifically identified the allegedly fraudulent filings made in connection with these properties to the defendants.  Opp. at 20.[14]

In *Reale*, the court found that the defendants who were accused in a 39-count superseding indictment of mail and wire fraud were entitled to a bill of particulars identifying the specific mailings, wire transfers, and approximate dates of each mailing and transfer.  There, the indictment did not identify any specific mailing or the approximate date on which it occurred and alleged only that payments were made via mail and wire in connection with the bribery and kickback schemes, and therefore was so general that it did not allow the defendants to prepare an adequate defense.  *Reale*, 1997 WL 580778, at *13–14.  In *Zandstra*, the court directed the government to provide a bill of particulars identifying approximate dates of allegedly fraudulent mailings in connection with a mail fraud count, where the count neither stated the dates when the allegedly fraudulent materials were sent or received, nor indicated which of the materials sent were fraudulent.  *Zandstra*, 2000 WL 1368050, at *3, 5–6.

While these cases present a closer call, they are distinguishable.  "The essential question is whether the defense has been provided sufficient particulars 'to conduct a meaningfully directed investigation of the relevant facts and circumstances and be

---

[13] Although the defendants argue that the government produced tens of thousands of documents, Mot. to Dismiss at 20–21; Reply Memorandum of Law in support of Motion to Dismiss or, in the alternative, for Bill of Particulars, Doc. 438, at 9, "the mere existence of 'mountains of documents' does not entitle [the defendants] to a bill of particulars."  *United States v. Mandell*, 710 F. Supp. 2d 368, 385 (S.D.N.Y. 2010); *see also United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *11 (S.D.N.Y. Oct. 9, 2020) ("[G]iven the details contained within the [g]overnment's production and the manner in which it is organized, this production makes any potential bill of particulars of limited marginal use, and certainly not necessary for [the defendant's] defense.").

[14] The government contends that the entities associated with the defendants were "thoroughly permeated with criminal activity" and fraud.  Opp. at 30.

prepared to respond to the charges.'"  *United States v. Ray*, No. 20 Cr. 110 (LJL), 2021 WL 3168250, at *3 (S.D.N.Y. July 27, 2021) (quoting *United States v. Bin Laden*, 92 F. Supp. 2d 225, 235 (S.D.N.Y. 2000)).  "Indeed, as a general matter, in our adversarial system, it is incumbent on the defense to review the discovery for itself to determine its significance; it is not the role of the government to tell the defense everything that is important and why."  *Id.* at *9.  The charging instruments, correspondence between the parties, and discovery advised the defendants of the specific properties at issue and the allegedly fraudulent documentation filed in connection therewith.  Furthermore, although the indictments do not specify each mailing or wire transmission, the affidavits contain specific examples of incidents when the defendants used the phone, email, or Internet in furtherance of the alleged fraud.  *Compare United States v. Silver*, 117 F. Supp. 3d 461, 471 (S.D.N.Y. 2015) (ordering, in part, bill of particulars identifying specific mailings and wire transfers because of "exceptional volume of mailings and wire transmissions" numbering in the "hundreds or thousands" and the government's ability to rely on any mailing or wire transmission in furtherance of wide-ranging crimes to satisfy the charges) *with United States v. Wedd*, No. 15 Cr. 616 (KBF), 2016 WL 1055737, at *3–4 (S.D.N.Y. Mar. 10, 2016) (denying request for bill of particulars identifying, in part, a list of mailings and wire, radio or television communications referenced in the indictment where defendants were provided with the theory of the case, the nature of the proof, and identification of certain emails that related to the scheme).  Accordingly, the defendants' motion for a bill of particulars is denied.

The defendants also request that the Court strike the phrase "innocent victims" from Counts Two and Three in the S1 Indictment pursuant to Rule 7(d), arguing that it is

irrelevant and prejudicial surplusage.  Supp. Mot. to Dismiss at 10 (citing S1 Indictment
at ¶¶ 4–5).  The government argues that the fact that the victims were "innocent," as
opposed to acting as co-conspirators in the alleged scheme or otherwise aware that the
defendants could not legally rent the properties, is relevant to the charges.  Supp. Opp. at
10.

      Rule 7(d) provides that the court on motion of the defendant may strike
surplusage from the indictment.  "A motion to strike surplusage is only granted where it
is clear that the alleged surplusage is not relevant to the crime charged and is
inflammatory and prejudicial.  If the evidence of the allegation is admissible and relevant
to the charge, then despite prejudice, the language will not be stricken."  *United States v.
Bin Laden*, 91 F. Supp. 2d 600, 621 (S.D.N.Y. 2000) (internal citations omitted).  "[I]t has
long been the policy of courts within the Southern District to refrain from tampering with
indictments."  *Id.* (citation omitted).  "Courts in this District generally delay ruling on any
motion to strike until after the presentation of the [g]overnment's evidence at trial,
because that evidence may affect how specific allegations relate to the overall charges."
*United States v. Maxwell*, 534 F. Supp. 3d 299, 322 (S.D.N.Y. 2021) (collecting cases).
This standard "is an 'exacting' one," and "only rarely is alleged surplusage stricken from
an indictment."  *United States v. Smith*, 985 F. Supp. 2d 547, 610 (S.D.N.Y. 2014)
(citation omitted).  Accordingly, the defendants' motion to strike the phrase "innocent
victims" from the S1 Indictment is denied without prejudice.  *See, e.g.*, *United States v.
Bazzi*, No. 07 Cr. 212 (RJA), 2010 WL 4451454, at *6 (W.D.N.Y. Apr. 21, 2010)
(denying motion to strike surplusage, including the phrase "many innocent victims,"
without prejudice to renewal), *report and recommendation adopted sub nom. United*

*States v. Xu Hang Wang*, No. 07 Cr. 212 (RJA), 2010 WL 4451244 (W.D.N.Y. Nov. 3, 2010).

## III.    MOTION TO SUPPRESS

### A.    Background

#### i.    Email Warrant

On November 22, 2016, the government applied for a warrant requiring Mail.com to produce the contents associated with the email account globalization@mail.com.  In support of the application, the government attached an affidavit by a Special Agent with the Office of Inspector General of the FDIC.  Declaration of Ezra Spilke ("Spilke Decl."), Ex. A, Doc. 428-1 ("Email Affidavit").  The affidavit asserted that the defendants had engaged in a conspiracy to defraud federally-insured financial institutions by falsely claiming ownership of certain property owned or possessed by such financial institutions. *Id.* at ¶ 8.  The agent stated that, based on a review of various records and conversations with employees of DBNTC, there was probable cause to believe the defendants had committed, and conspired to commit, bank fraud.  *Id.* at ¶¶ 8–11.  In addition, the agent proffered that the email account was used in connection with the transfer of ownership of certain property.  *Id.* at ¶ 12.  Accordingly, the affidavit established that the email account had been used repeatedly over a period of years as part of the defendants' scheme, and therefore, there was probable cause to believe that it contained evidence, fruits, and instrumentalities of the offenses.  *Id.* at ¶¶ 13–14.

A magistrate judge granted the government's search warrant application on November 22, 2016.  Spilke Decl., Ex. B, Doc. 428-2 ("Email Warrant").  The email warrant authorized law enforcement personnel to review the information associated with

the email account for evidence, fruits, and instrumentalities of the offenses.  *Id.* at

Attachment A, Section III.  In addition, the email warrant specified eight categories of

evidence responsive to the warrant.  *Id.*

### ii.    Residence Warrant

On January 23, 2017, after the indictment had been issued, the government

applied for a warrant to search the residence located at 1030 Washington Street in

Hollywood, Florida.  Spilke Decl., Ex. C, Doc. 428-3 ("Residence Warrant Application").

In support of the application, the government attached an affidavit by a Special Agent

with the Office of Inspector General of the FDIC.  *Id.* at Affidavit.  The affidavit set forth

the probable cause for the defendants' commission of the offenses charged in the

indictment, attaching a copy of the indictment and describing how the defendants

participated in a scheme in which they filed fraudulent and forged documents claiming to

transfer ownership of more than 40 real properties from financial institutions to entities

controlled by the defendants.  *Id.* at Affidavit ¶¶ 6–9.  The affidavit also stated that the

defendants submitted a false application for FDIC insurance and certification.  *Id.* at

Affidavit ¶ 9.  The agent stated that, based on a review of documents from various sources

and conversations with law enforcement officers, the defendants resided in, and operated

the fraudulent scheme from, the residence, which was also one of the properties for which

the defendants filed a fraudulent deed.  *Id.* at Affidavit ¶¶ 11–20.  The agent further stated

that, based on a review of documents, as well as the agent's training and experience, there

was probable cause to believe that electronic devices found within the residence would

contain evidence of the charged offenses.  *Id.* at Affidavit ¶¶ 21–28.  The affidavit

established the procedures for the execution of a warrant for, as well as the review and

return of, electronically stored information ("ESI"). *Id.* at Affidavit ¶¶ 29–33. While law enforcement personnel would make reasonable efforts to restrict their search to data falling within the categories of evidence specified in the warrant, the affidavit noted that they may need to conduct a complete review of all ESI to determine whether data was responsive. *Id.* at Affidavit ¶ 32.

A magistrate judge granted the government's search warrant application on January 23, 2017. Spilke Decl., Ex. D, Doc. 428-4 ("Residence Warrant"). The residence warrant contained a description and photograph of the residence, four categories of evidence, and information regarding the search and seizure of ESI. *Id.* at Attachment A; *id.* at Attachment B, Section I(A)–(B). Regarding the review of ESI, the warrant tracked the language in the affidavit, authorizing law enforcement personnel to conduct a complete review of all the ESI if necessary to locate responsive data. *Id.* at Attachment B, Section I(C).

On January 25, 2017, law enforcement officers executed the warrant, resulting in the recovery of 35 electronic devices. Opp. at 4. The defendants assert that these devices included their daughters' devices. Mot. to Suppress at 9. Of the 35 devices, 22 were forensically imaged by law enforcement by March 20, 2017, two months after the devices were initially seized. Opp. at 4. An additional device was forensically imaged in December 2017, and the final device was forensically imaged in May 2018, 15 months after the execution of the warrant. *Id.* The remaining devices could not be imaged. *Id.* at 4–5. In addition to producing a log of the evidence obtained from the residence to the defendants on April 13, 2017, three months after the execution, the government produced copies of the forensic images on a rolling basis, the final of which was made in October

2018, 20 months after the devices were originally seized.  *Id.* at 5 (citing Spilke Decl., Ex. E, Doc. 428-5); *see also* Mot. to Suppress at 10.

The defendants move to suppress the materials seized from the email account and the residence on the following grounds:  (1) the email warrant was based on a materially misleading affidavit; (2) the email warrant lacked particularity and was overbroad; (3) the residence warrant was insufficiently particularized and impermissibly broad; and (4) the delay of the off-site review of devices seized pursuant to the residence warrant was unreasonable.  Mot. to Suppress.

### B.    Legal Standard

The Fourth Amendment to the U.S. Constitution requires that "no [w]arrants shall issue, but upon probable cause . . . and particularly describing the place to be searched, and the persons or things to be seized."  In evaluating a warrant, therefore, a reviewing court must determine whether the warrant in question was sufficiently particular and whether the warrant was supported by probable cause.  *See United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013).  The duty of the reviewing court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."  *Illinois v. Gates*, 462 U.S. 213, 214 (1983).  "A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists."  *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (citations omitted).

The Second Circuit has articulated three requirements a warrant must meet for it to be considered sufficiently particular:  "First, a warrant must identify the specific offense for which the police have established probable cause.  Second, a warrant must describe the place to be searched.  Third, the warrant must specify the items to be seized

by their relation to designated crimes." *Galpin*, 720 F.3d at 445–46 (internal citations and

quotation marks omitted).  Essentially, "the warrant must enable the executing officer to

ascertain and identify with reasonable certainty those items that the magistrate has

authorized him to seize." *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992)

(citations omitted).[15]  In the context of a search of electronic devices, the Second Circuit

has counseled that courts should express "a heightened sensitivity to the particularity

requirement." *Galpin*, 720 F.3d at 447.

When determining whether the warrant is supported by probable cause, courts

must recall that probable cause is a "flexible, common-sense standard," *Texas v. Brown*,

460 U.S. 730, 742 (1983), which requires a case-by-case analysis of the totality of the

circumstances, *see Illinois*, 462 U.S. at 230.  "[O]nly the probability, and not a *prima*

*facie* showing, of criminal activity is the standard of probable cause."  *Spinelli v. United*

*States*, 393 U.S. 410, 419 (1969) (citation omitted), *abrogated on other grounds by*

*Illinois*, 462 U.S. 213.  "The task of the issuing magistrate is simply to make a practical,

common-sense decision whether, given all the circumstances set forth in the affidavit

before him, there is a fair probability that contraband or evidence of a crime will be found

in a particular place." *Illinois*, 462 U.S. at 214.

While there is a "presumption of validity" as to the affidavit supporting a warrant

application, *Franks v. Delaware*, 438 U.S. 154, 171 (1978), "[i]n certain circumstances,

---

[15] In assessing whether a warrant is sufficiently particularized, "a court may construe a warrant with
reference to a supporting application or affidavit" only "if the warrant uses appropriate words of
incorporation, and if the supporting document accompanies the warrant."  *Groh v. Ramirez*, 540 U.S. 551,
557–58 (2004) (citations omitted); *see also United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) ("Resort
to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by
reference in the warrant itself and attached to it.").  "Language in a warrant that simply references an
underlying affidavit" does not suffice.  *In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66, 100 (2d Cir.
2016).

however, a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003) (citations omitted). "One such circumstance is where the affidavit in support of the search warrant is alleged to contain deliberately or recklessly false or misleading information." *United States v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000) (citation omitted).

In order to be granted a hearing to test the veracity of a search warrant affiant's statements under *Franks*, the defendant "must make a 'substantial preliminary showing' that: (1) the claimed inaccuracies or omissions [in the affidavit] are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (citing *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987)). "Unsupported conclusory allegations of falsehood or material omission cannot support a *Franks* challenge; to mandate a hearing, the plaintiff must make specific allegations accompanied by an offer of proof." *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994) (citation omitted). "The *Franks* standard is a high one." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991).

If, after a hearing is held, the defendant establishes by a preponderance of the evidence that (1) the affiant made false statements or omissions "knowingly and intentionally, or with reckless disregard for the truth," and (2) the alleged misstatements or omissions are material, the Court must void the warrant and suppress the evidence obtained pursuant thereto. *Franks*, 438 U.S. at 155–56.

Whether the affiant "acted deliberately or recklessly is a factual question of intent." *United States v. Trzaska*, 111 F.3d 1019, 1028 (2d Cir. 1997). "An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Awadallah*, 349 F.3d at 67–68 (quoting *United States v. Colkley*, 899 F.2d 297, 300–01 (4th Cir. 1990)). Rather, a defendant is only entitled to a *Franks* hearing for omissions "that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *Id.* (emphases omitted). Recklessness by an affiant may be inferred "when omitted information was 'clearly critical' to assessing the legality of a search." *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996) (quoting *Rivera*, 928 F.2d at 604). "[T]he question is not what a reasonably prudent person would have appreciated given the attendant circumstances but rather whether the defendant in fact entertained serious doubts as to the truth of the subject statements." *United States v. Kunen*, 323 F. Supp. 2d 390, 395 (E.D.N.Y. 2004) (collecting cases) (quotation marks omitted). "All storytelling involves an element of selectivity, so it is not shocking that every affidavit will omit facts which, in retrospect, seem significant." *United States v. Vilar*, No. 05 Cr. 621 (KMK), 2007 WL 1075041, at *27 (S.D.N.Y. Apr. 4, 2007) (citations and internal quotation marks omitted).

To determine whether a false statement or omission is material, "the ultimate inquiry is whether, after putting aside erroneous information and correcting material omissions, there remains a residue of independent and lawful information sufficient to support a finding of probable cause or necessity." *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (citations omitted). Omissions "are not material unless they cast doubt on the existence of probable cause. The omitted information and the information in

the affidavit must be considered as a whole in determining if probable cause continues to exist." *United States v. Marin–Buitrago*, 734 F.2d 889, 895 (2d Cir. 1984) (citations omitted). "If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." *United States v. Martin*, 426 F.3d 68, 73–74 (2d Cir. 2005) (citation omitted).

Even if a court finds that a warrant is defective, it will not order that the resulting evidence be suppressed so long as the government demonstrates that the evidence was "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984); *accord United States v. Clark*, 638 F.3d 89, 99–100 (2d Cir. 2011). Given that courts afford a presumption of reasonableness to searches conducted pursuant to a warrant, *Clark*, 638 F.3d at 100, there are only four circumstances under which the good faith exception will not apply:

(1) where the issuing magistrate has been knowingly misled;

(2) where the issuing magistrate wholly abandoned his or her judicial role;

(3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and

(4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon*, 468 U.S. at 923).

### C.    Discussion

#### i.    Email Warrant

*First*, the Court addresses the threshold question of whether the defendants have standing to move to suppress the evidence gathered pursuant to the email warrant.

"[A] defendant's Fourth Amendment rights are violated only when the challenged conduct invades *his* legitimate expectation of privacy rather than that of a third party."

*United States v. Santillan*, 902 F.3d 49, 62 (2d Cir. 2018) (emphasis in original) (internal quotation marks and citation omitted).  A defendant seeking to suppress evidence based on an alleged Fourth Amendment violation "must show that he had a reasonable expectation of privacy in the place or object searched." *Id.* (quoting *United States v. Delva*, 858 F.3d 135, 148 (2d Cir. 2017)).  "A person has no expectation of privacy in another person's email account." *United States v. Lustyik*, 57 F. Supp. 3d 213, 223 (S.D.N.Y. 2014) (citation omitted).  The defendant must submit sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge, "demonstrating sufficient facts to show that he had a legally cognizable privacy interest in the searched premises at the time of the search." *United States v. Lauria*, No. 19 Cr. 449 (NSR), 2020 WL 5743523, at *6 (S.D.N.Y. Sept. 25, 2020) (citation omitted).  Absent this demonstration, the defendant lacks standing to challenge the search.

The government argues that the defendants failed to demonstrate standing to challenge the email warrant.  Opp. at 2 n.2 (citing Mot. to Suppress at 5), 21, 28–29. With respect to Almaleh, nowhere in the defendants' motion to suppress does he assert a legitimate expectation of privacy, nor does he claim to own the account.  *See, e.g.*, *United States v. Mathieu*, No. 16 Cr. 763 (LGS), 2018 WL 5869642, at *2 (S.D.N.Y. Nov. 9, 2018).  In fact, the defendants allege that the email account belonged to Iotova.  Mot. to Suppress at 1, 2.  Therefore, absent any showing that the email account belongs to Almaleh, he cannot assert that the search of her email account and the seizure of emails therefrom—even if unlawful—violated his Fourth Amendment rights.  Because Almaleh lacks standing to challenge the search of Iotova's email account, the Court denies his

motion to suppress all evidence obtained pursuant to the email warrant. With respect to Iotova, she subsequently submitted a declaration stating that she co-owned the entity that owned the email account at the time that the warrant was executed. Doc. 439; *see, e.g.*, *United States v. Ray*, 541 F. Supp. 3d 355, 379–80 (S.D.N.Y. 2021) (collecting cases). Accordingly, the Court finds that Iotova has sufficiently alleged standing for purposes of the motion to suppress.

*Second*, the defendants argue that because the warrant was based on a deliberately false and materially misleading affidavit, which allegedly omitted facts regarding the basis for probable cause, all evidence obtained pursuant to the warrant must be suppressed. Mot. to Suppress at 2. While the affidavit states that the agent learned, from conversations with DBNTC employees, that none of the deeds were bona fide documents and none of the transactions reflected therein actually occurred, it excluded the fact that DBNTC, as well as other banks, were involved in litigation against the defendants or entities that they controlled. *Id.* at 3–4. In opposition, the government contends that the alleged omission was not material to the determination of probable cause, nor was it made with intent to deceive or reckless disregard for the truth. Opp. at 34.

The defendants have not shown that there were any intentional and material omissions in the email affidavit. As an initial matter, as the government argues, the defendants have not presented "specific allegations accompanied by an offer of proof" of the alleged litigation between DBNTC and the defendants. *Velardi*, 40 F.3d at 573 (citing *Franks*, 438 U.S. at 171); *see also* Opp. at 34. However, even assuming that the defendants sufficiently alleged the existence of the litigation, they have not made a substantial preliminary showing that the affiant deliberately or recklessly misrepresented

facts to the magistrate judge.  It is not clear whether the affiant was aware of the alleged litigation.  Even if the affiant had such knowledge, the defendants have not shown that the omission was designed to mislead or made in reckless disregard of whether it would mislead the magistrate judge.  *Awadallah*, 349 F.3d at 67–68.  Neither may recklessness be inferred here, where the omitted information was not clearly critical to assessing the sufficiency of the application.  *Reilly*, 76 F.3d at 1280.  The defendants have not established that, by omitting that DBNTC was engaged in litigation against the defendants, the affiant "entertained serious doubts as to the truth" of the subject statements.  *Kunen*, 323 F. Supp. 2d at 395 (citation omitted).

Furthermore, the defendants have not made a substantial preliminary showing that the corrected affidavit incorporating the alleged omission would have lacked probable cause.  As the government argues, DBNTC was identified as a victim of the defendants' scheme in the affidavit.  *See* Opp. at 35.  While the Court acknowledges the defendants' argument that DBNTC's litigation against them may go to the question of potential bias, they have not cited any facts in support of their position, and such bias does not necessarily require preclusion of the facts provided by the banks.  While the probable cause determination was based, in part, on the DBNTC employees' statements that the deeds were fraudulent, the affidavit also describes how the defendants filed paperwork purporting to transfer ownership of properties from various banks, including DBNTC, Bank of America, and others, and how the defendants used the email account when falsely representing these banks in furtherance of their scheme.  After including the omission in the affidavit, the Court finds that there remains "a residue of independent and lawful information sufficient to support a finding of probable cause or necessity."

*Rajaratnam*, 719 F.3d at 146 (citation omitted).[16]  Thus, the defendants have not made a substantial preliminary showing that the affidavit contained intentional and material omissions, and thus no hearing pursuant to *Franks* is warranted.

      *Third*, the defendants argue that because the warrant and its execution were unconstitutionally overbroad and lacked particularity, all evidence derived from the warrant must be suppressed.  Mot. to Suppress at 4–5.  Specifically, they assert that the following categories of evidence as set forth in the warrant were impermissibly broad, resulting in the seizure of their personal conversations:

> (1) Communications related to the subject offenses (including but not limited to communications regarding additional properties fraudulently claimed by the [defendants] that have not yet been identified by law enforcement), contact lists and address books, videos, images, and other stored content information presently contained in the Subject Account;
>
> (2) Evidence concerning the identity and location of the users of the Subject Account, including but not limited to communications showing to whom the Subject Account belongs;
>
> (3) Evidence concerning identities and locations of co-conspirators in the Subject Offenses, including communications with co-conspirators, photos, videos, or other attachments, and address book information; and
>
> (4) Evidence of the relationships between co-conspirators involved in the Subject Offenses.

*Id.* at 6 (citing Email Warrant at Attachment A, Section III(a)–(d)).  In addition, aside from a single reference to the offenses, the defendants contend that the warrant did not

---

[16] The Court does not find that the omission was intentional or material.  *See, e.g.*, *United States v. Harding*, 273 F. Supp. 2d 411, 427 (S.D.N.Y. 2003) ("It no doubt is commonplace for confidential informants to have strong feelings concerning the subjects of their disclosure—this surely often motivates them to come forward with information.  Furthermore, [the defendant] has not shown that [the informant's] alleged bias would have made him more likely to provide untruthful, as opposed to truthful, information concerning [the defendant].").

contain any information regarding "what species of bank fraud – and, by extension, what instrumentalities of that fraud – [the agents] were searching for." *Id.* at 7.

In opposition, the government argues that the warrant was sufficiently particular as it included the type of language accepted in this Circuit and that the cases relied upon by the defendants are readily distinguishable.[17]  Opp. at 21, 31–34.  Furthermore, the government contends that the warrant was not overbroad, because not only have courts routinely upheld warrants authorizing the seizure and search of entire email accounts, but the affidavit also set forth specific evidence and established that the scope of the years-long scheme to defraud was vast and complex.  *Id.* at 21, 29–31.

Pursuant to the test established in *Galpin*, the warrant was sufficiently particular. First, it indicated that the magistrate judge had found probable cause to believe that evidence of bank fraud and conspiracy to commit bank fraud would be found in the email account.  Second, it identified the email account as the item to be searched, and specified the types of data that the government would review.  The fact that the warrant authorized law enforcement agents to access all the data associated with the email account in order to find responsive data does not automatically render it insufficiently particular.  *See United States v. Nejad*, 436 F. Supp. 3d 707, 728–29 (S.D.N.Y. 2020) (collecting cases). As the Second Circuit has acknowledged, "it will often be impossible to identify in advance the words or phrases that will separate relevant files or documents before the search takes place, because officers cannot readily anticipate how a suspect will store information related to the charged crimes."  *United States v. Ulbricht*, 858 F.3d 71, 102

---

[17] In any event, to the extent the email warrant was overbroad, the government argues that any suppression remedy would extend only to the personal conversations between the defendants and friends and family. Opp. at 31 (citing Memorandum of Law in support of Motions to Suppress Physical Evidence, Doc. 427 ("Mot. to Suppress"), at 6).

(2d Cir. 2017). Thus, "by necessity, government efforts to locate particular files will require examining a great many other files to exclude the possibility that the sought-after data are concealed there." *Galpin*, 720 F.3d at 447 (quoting *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176 (9th Cir. 2010)).

Third, the warrant specified eight categories of evidence relating each category to the investigation of the identified offenses. *See* Email Warrant at Attachment A, Section III. For example, category (a) relates to the offenses. Categories (b), (e), and (f) relate to the identities and locations of the individuals associated with the email account. Categories (c) and (d) relate to the defendants' relationships with any co-conspirators. Category (g) relates to the location of additional evidence regarding the offenses. Category (h) relates to information necessary to carry out the searches. Indeed, the defendants do not show how these categories could "describe the items more particularly in light of the information available to [the government] at the time the warrant was issued." *United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *8 (S.D.N.Y. Oct. 9, 2020) (quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)). Nor have they identified any specific category as lacking particularity.

As the Second Circuit has held, "[s]earch warrants covering digital data may contain 'some ambiguity . . . so long as law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant.'" *Ulbricht*, 858 F.3d at 100 (quoting *Galpin*, 720 F.3d at 446 (internal quotation marks omitted)). "Moreover, it is important to bear in mind that a search warrant does not necessarily lack particularity simply because it is

broad." *Id.*; *see also United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990) ("In upholding broadly worded categories of items available for seizure, we have noted that the language of a warrant is to be construed in light of an illustrative list of seizable items" such as "examples of the type of records that could be seized."). "While some of the categories are somewhat vague, given the complexity of the alleged scheme and the numerous documents involved, the lists of items are described with as much particularity as circumstances reasonably allowed." *United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 664712, at *9 (S.D.N.Y. Feb. 25, 2013) (quoting *United States v. Hernandez*, No. 09 Cr. 625 (HB), 2010 WL 26544, at *10 (S.D.N.Y. Jan. 6, 2010)), *aff'd*, 803 F.3d 120 (2d Cir. 2015); *see, e.g.*, *Lustyik*, 57 F. Supp. 3d at 227–28 (collecting cases).

Contrary to the defendants' argument that the warrant was insufficiently particular because it cites to 18 U.S.C. § 1344 and 18 U.S.C. § 1349 without specifying the "species of bank fraud," Mot. to Suppress at 7, as the government argues, courts have routinely approved of the language used in the warrant. *See, e.g.*, *Ulbricht*, 858 F.3d at 104 (holding that the warrants satisfied the particularity requirements where "they listed the subject offenses, described the things to be searched, and identified the information to be seized in relation to the charged crimes"); *Levy*, 2013 WL 664712, at *9 (finding warrant was sufficiently particularized where it identified "evidence, fruits, and instrumentalities of criminal violations" of specified fraud statutes and set forth categories of documents), *aff'd*, 803 F.3d 120; *Hernandez*, 2010 WL 26544, at *10 (same).[18] Accordingly, the warrant was sufficiently particular.

---

[18] The Court agrees with the government that the cases cited by the defendants are distinguishable. *See, e.g.*, *United States v. Wey*, 256 F. Supp. 3d 355, 384 (S.D.N.Y. 2017) (the warrants lack requisite particularity, because "neither cite criminal statutes nor in any way describe any suspected criminal conduct"); *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 454 (S.D.N.Y. 2013) (the warrant was

Any argument that the warrant was overbroad because it required the production of all information regarding the account is misguided.  It is well-established that "the [g]overnment may first obtain all potentially relevant data from a service provider and then inspect them to determine whether that data is responsive to the warrant."  *Blakstad*, 2020 WL 5992347, at *8 (collecting cases); *see also Ray*, 541 F. Supp. 3d at 399 ("Courts in this Circuit . . . have uniformly held that law enforcement . . . may obtain a warrant to request all emails from an account.").

The agent described a complex financial fraud involving the defendants, multiple entities associated with the defendants, and the use of the email account over a number of years in furtherance of the scheme.  Email Affidavit at ¶¶ 8–12.  For example, the affidavit set forth how the email account was provided as the email address for various banks on fraudulent or forged documents purporting to transfer ownership of real properties to the defendants.  *Id.* at ¶ 12.  Therefore, the affidavit established that there was probable cause to seize the eight categories of materials.  Moreover, the four categories specifically challenged by the defendants are each supported by probable cause, as they relate to the offenses, the identities and locations of the individuals associated with the email account, and any co-conspirators involved in the scheme.  Email Warrant at Attachment A, Section III(a)–(d).  Accordingly, the Court finds that the warrant was not unconstitutionally overbroad.[19]

---

insufficiently particular, because "[n]othing on the face of the [ ] warrant informs the searching officer for which crimes the search is being undertaken"); *United States v. Vilar*, No. 05 Cr. 621 (KMK), 2007 WL 1075041, at *22 (S.D.N.Y. Apr. 4, 2007) (the warrant violated the particularity requirement of the Fourth Amendment, because "nowhere does the [w]arrant indicate what specific acts of wrongdoing are being investigated"); *see also* Opp. at 32; Mot. to Suppress at 5–8.

[19] Because the Court finds that the warrant was not insufficiently particularized or overbroad, it need not address the government's argument that the "all records exception" applies, permitting the seizure of all records associated with the defendants' companies.  *See* Opp. at 30–31.  "The all records exception allows for the seizure of all of an enterprise's records when the enterprise is primarily engaged in unlawful activity

*Fourth*, as the government argues, even if the warrant is constitutionally deficient, suppression of the search and seizure is not warranted where the government acted in good faith reliance on it. *See* Opp. at 21. Furthermore, none of the four circumstances under which the good faith exception does not apply, as described above, are relevant here. Indeed, the Court has already considered and rejected arguments related to two of the situations: whether the issuing judge was knowingly misled, and whether the warrant application was so lacking in indicia of probable cause as to render reliance upon it unreasonable. *See Nejad*, 436 F. Supp. 3d at 732–33. The two remaining circumstances, that the issuing magistrate wholly abandoned her judicial role in granting the warrant application and that the warrant application is so facially deficient that reliance on it was unreasonable, are not raised by the defendants, nor could they be. *See, e.g.*, *United States v. Mendlowitz*, No. 17 Cr. 248 (VSB), 2019 WL 1017533, at *10–11 (S.D.N.Y. Mar. 2, 2019); *Hernandez*, 2010 WL 26544, at *12. Thus, even if the warrant is not valid, the good faith doctrine would preclude suppression of the seized evidence.

### ii.    Residence Warrant

*First*, the defendants argue that the residence warrant was impermissibly broad and lacked particularity. Specifically, they assert that the warrant failed to inform the agents what evidence they could reasonably seize as evidenced by the fact that every electronic device at the residence was seized. Mot. to Suppress at 8–9 (citing Residence Warrant at Attachment B, Section I(B)).

---

and sufficient evidence is presented of the pervasiveness of that unlawful activity within the enterprise." *United States v. Bowen*, 689 F. Supp. 2d 675, 683 (S.D.N.Y. 2010) (citing *United States Postal Serv. v. C.E.C. Servs.*, 869 F.2d 184, 187 (2d Cir. 1989)), *aff'd sub nom. United States v. Ingram*, 490 F. App'x 363 (2d Cir. 2012).

In opposition, the government argues that the warrant includes the type of particularized language approved of in this Circuit, and that the enumerated categories of evidence are closely tethered to the probable cause described in the affidavit and restricted to the scheme charged in the indictment.  Opp. at 21, 36–38 (citing Residence Warrant Application at Attachment B, Section I(A)).[20]

The Court recognizes that where the property to be searched is a hard drive or other electronic media, "the particularity requirement assumes even greater importance," *Ulbricht*, 858 F.3d at 99 (quoting *Galpin*, 720 F.3d at 446), for the "seizure of a computer hard drive, and its subsequent retention by the government, can . . . give the government possession of a vast trove of personal information about the person to whom the drive belongs, much of which may be entirely irrelevant to the criminal investigation that led to the seizure."  *Id.* (quoting *United States v. Ganias*, 824 F.3d 199, 217 (2d Cir. 2016)).

Under the *Galpin* test, the warrant was sufficiently particular.  First, it indicated that the magistrate judge had determined there was probable cause to find that violations of 18 U.S.C. §§ 1007 (false statements to the FDIC), 1343 (wire fraud), 1344 (bank fraud), and 1349 (conspiracy to commit bank fraud) had been committed.  Second, it identified the address and provided a description and photograph of the premises to be searched, and specified the items to be seized.  As set forth above, the fact that the warrant authorized law enforcement agents to seize any electronic devices that may contain relevant ESI does not render it insufficiently particular.  As the government argues, courts have routinely upheld the language used in the warrant.  *See, e.g.*, *Ray*, 541

---

[20] The government notes that although the section heading in defendants' motion to suppress states that the residence warrant was impermissibly broad and lacking particularity, the substantive argument thereunder appears to only address the particularity requirement.  Opp. at 36 n.6 (citing Mot. to Suppress at 8).  For the purposes of this motion, the Court also addresses whether the warrant was overbroad.

F. Supp. 3d at 391 (warrant authorizing seizure of all electronic devices and cellphones was sufficiently particular); *Levy*, 2013 WL 664712, at *9–10 (warrant authorizing seizure of evidence, fruits, and instrumentalities of violations of specified fraud charges, including computers, phones, and electronic data storage devices, was sufficiently particular), *aff'd*, 803 F.3d 120.

Third, the warrant described four categories of evidence, relating each category to the identified offenses. As described above, it is well-settled that a warrant is not necessarily lacking in particularity because it is broad, particularly where, as here, it provides an illustrative list of items.

A review of the supporting affidavit indicates that the magistrate judge had a substantial basis to conclude that the warrant application was supported by probable cause. *See, e.g.*, *Levy*, 2013 WL 664712, at *7–8, *aff'd*, 803 F.3d 120; *Hernandez*, 2010 WL 26544, at *8–9. The affidavit described how the defendants operated a scheme by which they fraudulently transferred ownership of more than 40 real properties from financial institutions. Residence Warrant Application at Affidavit ¶¶ 6, 8. The affidavit further stated that the defendants submitted a false application for FDIC insurance and certification. *Id.* at Affidavit ¶ 9. Based on the evidence, as well as the agent's training, experience, and participation in the investigation, the agent stated that the residence was not only one of the properties for which the defendants filed a fraudulent deed, but it was also their place of residence used in furtherance of the scheme. *Id.* at Affidavit ¶¶ 11–20.

The agent explained that the defendants used the internet to submit false deeds and solicit tenants for the properties. *Id.* at Affidavit ¶¶ 21–23. Based on the agent's training and experience, individuals who engage in the type of conduct alleged here

commonly use computers and smart phones in furtherance of illegal activity. *Id.* at Affidavit ¶¶ 25–26. Therefore, the affidavit established that there was probable cause to seize the four categories of materials, in addition to any devices that may contain any ESI falling within such categories. *Id.* at Affidavit ¶¶ 27–28; *see United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 306 (S.D.N.Y. 2018) ("[T]he affidavits for search of a device or account do not have to provide specific evidence that every category of evidence sought will be present in that device or account, but can rely on the affiant['s] training, experience, and the totality of the circumstances to support a 'common-sense' probability that the evidence may be found there sufficient for probable cause."). To the extent that the defendants argue that the warrant is invalid because their daughters' devices were seized and searched, this argument fails. *See, e.g.*, *United States v. Hernandez*, No. 19 Cr. 97(VM), 2020 WL 3257937, at *37 (S.D.N.Y. June 16, 2020) ("Agents often cannot determine which individuals have accessed an electronic device without seizing and searching it."). Thus, the Court concludes that the warrant was not overbroad.

*Second*, even assuming that the warrant was overbroad or insufficiently particularized, for the same reasons described above with respect to the email warrant, the Court finds that the good faith doctrine would preclude suppression of the seized evidence. As the government notes, the defendants have not asserted that the agents did not act in good faith, nor do they argue that the doctrine should not apply. Opp. at 39.

### iii.    Off-site Review

The defendants argue that the delay of the off-site review of the devices seized pursuant to the residence warrant was unreasonable. Mot. to Suppress at 9–10 (citing

Spilke Decl., Ex. E).  In opposition, the government argues that the execution of the

warrant was reasonable under the Fourth Amendment and Rule 41 of the Federal Rules of

Criminal Procedure in light of the number of devices and volume of data at issue.  Opp.

at 21, 39–43.

Under Rule 41(e)(2)(B), a warrant may "authorize the seizure of electronic

storage media or the seizure or copying of [ESI]."  Fed. R. Crim. P. 41(e)(2)(B).  "Unless

otherwise specified, the warrant authorizes a later review of the media or information

consistent with the warrant."  *Id.*  Although "there is no established upper limit as to

when the government must review seized electronic data to determine whether the

evidence seized falls within the scope of a warrant," it is well-settled that "the Fourth

Amendment requires the government to complete its review . . . within a 'reasonable'

period of time."  *United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012)

(citation omitted); *see also United States v. Alston*, No. 15 Cr. 435 (CM), 2016 WL

2609521, at *3 (S.D.N.Y. Apr. 29, 2016) (same).  "[T]he practical reality is that there is

no basis for a 'one size fits all' presumptive period" for the duration of review, because

"[a] substantial amount of time can be involved in the forensic imaging and review of

information . . . due to the sheer size of the storage capacity of media, difficulties created

by encryption and booby traps, and the workload of the computer labs."  Fed. R. Crim. P.

41(e)(2)(B) advisory committee's notes to the 2009 Amendments.

Here, the government's review of the seized material was appropriate and

comported with the warrant, which expressly authorized "various techniques to locate

information responsive to the warrant."  To the extent that the defendants argue that the

execution of the warrant was unreasonable because every electronic device was seized, as

further described above, courts have routinely rejected this argument. *See* Mot. to Suppress at 9; *see also Ray*, 541 F. Supp. 3d at 394 ("The Fourth Amendment does not prohibit law enforcement from seizing, pursuant to a warrant, electronic devices that are likely to contain evidence of crime simply because that evidence is likely intermingled with other non-criminal and private information.").[21]

Here, the agents executed the warrant, reviewed the evidence over a reasonable period of time, and provided defense counsel with rolling productions. Of the 35 devices seized, 24 were capable of being imaged. The government forensically imaged 22 of the 24 within approximately two months following the execution of the warrant, with the remaining two devices being forensically imaged within approximately 15 months after the execution. Opp. at 4–5, 41–42. In addition, the government produced a log of the evidence obtained from the residence to the defendants within three months as well as copies of the forensic images on a rolling basis, the final of which was made approximately 20 months after the execution. *Id.* at 5 (citing Spilke Decl., Ex. E); *see also* Mot. to Suppress at 10. Aside from conclusory allegations that the size of the data storage was "not especially large" and that the number of devices was typical for a family of four, the defendants do not allege any basis for finding that the government's review was unreasonable. *See* Mot. to Suppress at 10. "[N]umerous cases hold that a delay of several months or even years between the seizure of electronic evidence and the completion of the government's review of it is reasonable." *United States v. Jarman*, 847

---

[21] The Court notes the government's assertion that upon defense counsel's representations that two devices seized by the agents were only used by the defendants' daughters, it reviewed and returned those devices to the defendants within approximately seven months after the seizure. *Id.* at 41. The government further contends that the defendants have not requested the return of any other device, nor have they asserted that any other device was used exclusively by their daughters or another third party. *Id.*

F.3d 259, 267 (5th Cir. 2017) (citation and internal quotation marks omitted); *see also Nejad*, 436 F. Supp. 3d at 735 (finding a review process of approximately three years reasonable); *Mendlowitz*, 2019 WL 1017533, at *12 (collecting cases and finding a review process of 18 months reasonable).  Thus, the Court finds that the review period was reasonable.

The government has properly retained the electronic devices that remain in its possession, because it "has an interest in preserving seized electronic devices for purposes of introducing data stored therein at trial."  *Mendlowitz*, 2019 WL 1017533, at *12 (collecting cases and finding that the retention of electronic devices was reasonable).

## IV.    CONCLUSION

For the reasons set forth above, the defendants' motions are DENIED.  The Clerk of the Court is respectfully directed to terminate the motions, Docs. 423 and 426.

It is SO ORDERED.

Dated:    February 28, 2022
New York, New York

_____
EDGARDO RAMOS, U.S.D.J.